## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JENNIFER SUTHERLIN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-636-JED-PJC** |
| | ) | |
| **INDEPENDENT SCHOOL DISTRICT** | ) | |
| **NO. 40 OF NOWATA COUNTY,** | ) | |
| **OKLAHOMA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The Court has for its consideration Defendant's Motion to Dismiss Plaintiff's First Original Complaint and Opening Brief in Support (Doc. 7), which is now at issue (*see* Docs. 15 and 20).

### I.   BACKGROUND FACTS

In this case, plaintiffs, Jennifer Sutherlin and T.J. Sutherlin ("plaintiffs" or the "Sutherlins"), allege claims, individually and on behalf of their minor child (designated by pseudonym as "S.S."), against Independent School District No. 40 of Nowata County, aka Nowata Public School District, Oklahoma ("defendant" or the "School District").  S.S. is approximately 13 years old and has been diagnosed with Asperger's Disorder and a learning disability.  In that regard, S.S. has been identified as a student with a disability under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., and attends school under an Individual Education Plan (i.e. special education).  The Sutherlins allege that, in the Fall of 2011, S.S. was subjected to almost constant bullying by his peers.  Plaintiffs state that S.S. was called names by other children and repeatedly subjected to physical abuse.  They further allege

that, despite numerous complaints lodged with the School District, nothing was done to limit the bullying of S.S., and that the School District itself engaged in bullying behavior.   This harassment eventually resulted in S.S. becoming depressed, withdrawn, and suicidal.

In response to federal guidelines and directives, schools across the United States, including those in Oklahoma, developed policies to address bullying and harassment in schools. Defendant has a "Zero Tolerance" policy towards bullying.  Under this policy, bullying of any kind is not to be permitted at any time on school grounds.  Plaintiffs maintain that the School District has failed to abide by its own policy in permitting S.S. to be harassed and injured at school.

On November 15, 2012, plaintiffs brought this lawsuit against the School District, seeking damages under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and state law, and defendant's motion to dismiss followed.

## II.    STANDARDS

Defendant moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In considering a motion under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id*. at 562.  Although decided within an antitrust context, *Twombly* articulated the pleading standard for

all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon*, 935 F.3d 1106, 1109-10 (10th Cir. 1991)).

### III.   ANALYSIS

#### A.   <u>Section 1983 Claims</u>

##### 1.  Substantive Due Process – Failure to Protect

The Supreme Court has recognized that students have a property right in public education, and as such, that right is protected by the Due Process Clause of the Fourteenth Amendment. *Edwards For & in Behalf of Edwards v. Rees*, 883 F.2d 882, 885 (10th Cir. 1989). Plaintiffs allege that S.S.'s due process rights were violated by defendant's actions and inactions with respect to S.S.'s treatment at school.

Generally speaking, state actors are not liable for the violent acts of third parties, but there are two well-defined exceptions to this rule:

> The first exception, known as the special relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual...." The second exception, sometimes referred to as the "danger creation" theory, provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual."

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998)

(quoting *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996)).

Plaintiffs assert that the "special relationship" and "danger creation" exceptions are both

applicable in this case.

a.   *Special Relationship Doctrine*

States are not required to provide citizens with any particular protective services under

the Due Process Clause and the "failure to protect an individual against private violence does not

constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of

Social Servs.*, 489 U.S. 189, 197 (1989). "However, if the state restrains an individual's freedom

to act to protect himself or herself through a restraint on that individual's personal liberty, the

state may thereby enter into a 'special relationship' during such restraint to protect that

individual from violent acts inflicted by others." *Armijo*, 159 F.3d at 1261. The Tenth Circuit

applied this principle in the context of a due process claim against a school district in *Graham v.

Independent Sch. Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994). In *Graham*, the court held that

schools have no affirmative duty to protect students from assaults by other students, even where

the school knew or should have known of the danger presented. *Id*. at 994-95. On the other

hand, if the state takes a person into custody or holds him against his will, the state assumes

some measure of a constitutionally mandated duty of protection. *Id*. at 994. But, compulsory

attendance laws do not give rise to such a duty. *Id*. (citing *Maldonado v. Josey*, 975 F.2d 727,

732 (10th Cir.1992), *cert. denied*, 507 U.S. 914 (1993)). This is because, "[d]espite mandatory

school attendance laws, the parents, not the state, remain the child's primary caretakers." *Sargi v.

Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995).

Plaintiffs argue that S.S. maintained a special relationship with the School District because of his disabilities, which plaintiffs argue create a heightened level of responsibility, and because of Oklahoma's compulsory attendance law, which mandated his attendance.[1]  Defendant argues that courts have not distinguished between disabled and non-disabled students for purposes of determining whether a special relationship existed.

The Tenth Circuit, while having clearly held that compulsory attendance laws do not give rise to a special relationship, *Maldonado*, 975 F.2d at 732, has not addressed whether a student's disability, in conjunction with compulsory attendance laws, gives rise to a special relationship. Indeed, it appears that the Sixth Circuit is the sole circuit court to have addressed this issue, about which it had the following to say:

> Finally, plaintiff's argument that decedent's medical condition and the school district's knowledge of that condition created a special relationship between decedent and the school district misunderstands the nature of the special relationship theory. A special relationship can only arise when the state restrains an individual. **Decedent's medical condition and its debilitating effects, however, were not restrictions imposed or created by the state**. *See DeShaney*, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9.

*Sargi*, 70 F.3d at 911 (emphasis added).

This Court is persuaded by the rationale of *Sargi*.  S.S.'s Asperger's Disorder and learning disability do not amount to restrictions that have been imposed by the School District.

---

[1]  Plaintiffs' complaint states that S.S. was placed in the "resource room" with a student that the school district knew had bullied him.  (Doc. 2, at ¶¶ 87-88).  Plaintiffs point to this allegation as support for the proposition that a special relationship existed with defendant because S.S.'s placement in the resource room amounted to a restriction on his freedom.  Plaintiffs also state that S.S. was not able to leave school of his own accord (i.e. a restriction on his freedom).  (*Id.*, at ¶ 47).  The Court sees little difference between the resource room and the school grounds generally with respect to whether S.S. was free to leave.  Plaintiffs have not alleged that S.S.'s placement in the resource room was punishment; they note that the room is essentially a special classroom "for students with disabilities."  (*Id.*, at 87).  Plaintiffs agree that compulsory attendance laws do not, in and of themselves, create a special relationship in this context.  (Doc. 15, at 10).  Hence, the Court does not view S.S.'s placement in the resource room as a factor relevant to whether a special relationship existed between S.S. and defendant.

As such, these disabilities do not create the type of special relationship contemplated by the *DeShaney* court – i.e. one resulting from a restraint on an individual's freedom imposed by the state, such as incarceration or involuntary commitment.  *DeShaney*, 489 U.S. at 200 ("it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.").

Hence, plaintiffs have failed to state a claim for violation of the Due Process Clause under the special relationship theory.

### b.    Danger Creation Theory

"A state also may be liable for an individual's safety under a 'danger creation' theory if it created the danger that harmed that individual."  *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1495-99 (10th Cir.1992)). For the danger creation theory, the Tenth Circuit has created a six-part test to determine whether a defendant has created a special danger for the plaintiff:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.

*Ruiz v. McDonnell*, 299 F.3d 1173, 1182-83 (10th Cir. 2002) (citing *Armijo*, 159 F.3d at 1262–63).

Defendant argues that plaintiffs' complaint fails to allege facts sufficient to meet the first and sixth elements; that is, defendant did not create the danger at issue here and the facts fall short of the conscience shocking standard.

As to the first element, the Court finds that plaintiffs have pled facts sufficient to avoid dismissal.  This element requires affirmative conduct on the part of the state in placing the plaintiff in danger.  Plaintiffs' complaint alleges numerous facts that, when taken as true, would establish that the defendant created an atmosphere that increased S.S.'s vulnerability to bullying. Specifically, plaintiffs allege, among other things, that incidences of bullying increased by 300% over three years; school officials ignored S.S.'s complaints of bullying and harassment; a school official referred to S.S. as "crazy" in front of other students (who soon followed suit); and school officials witnessed physical abuse of S.S., but did nothing to curtail it.  (Doc. 2, at 15-27).

As to the sixth element, the Court finds that the facts alleged by plaintiffs, when viewed in their totality, do not shock the conscience.  Plaintiffs' complaint, examined in the light most favorable to them, alleges that S.S. was subject to a repeated pattern of bullying and harassment, which the defendant did little, if anything, to correct.  Plaintiffs summarize the actions and inactions on the part of the defendant as follows:

> * * * School district officials – with whom parents entrust their children's safety – consciously elected to (1) walk out of the school building to witness S.S. being physically assaulted, only to turn around and walk inside and not stop the beating of S.S., (2) affirmatively place S.S. in the resource room with other students whom it [sic] knew bullied S.S., (3) engage in name calling of S.S. in front of students, (4) condoned the open physical assault of S.S., (5) not investigate numerous incidents reported to them of bullying and harassment; and (6) discourage the reporting of bullying.
>
> *      *      *
>
> Combined with the allegations in the Complaint that the School District failed to adequately train employees, and failed to implement its no tolerance bullying policies, Defendant's conduct may be found to be truly conscience shocking.

(Doc. 15, at 16-17, footnote omitted).  The Court disagrees with plaintiffs that these allegations shock the conscience "in a Fourteenth Amendment substantive due process sense." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1160 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47

(1998).  While these actions and inactions may demonstrate bad judgment and insensitivity, even to a high degree, they are not "brutal" and "offensive" enough to meet the high standard of conscience shocking behavior.  *Lewis*, 523 U.S. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)); *see also Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist.*, No. 19, 77 F.3d 1253, 1258 (10th Cir. 1996) (teacher's behavior in repeatedly calling student "prostitute" and ignoring other students' similar treatment was not conscience shocking); *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 278 (10th Cir. 1996) (prison librarian raped by inmate where corrections officials removed guard from the library was not "'so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience'") *but cf. Armijo*, 159 F.3d 1253, 1264 (10th Cir. 1998) (finding as conscience shocking school counselor's taking of mentally disabled teenager home after suspension and leaving him alone where school was aware that teen was suicidal and distraught, had access to firearms, and teen ultimately committed suicide).

Based upon plaintiffs' failure to allege facts which would demonstrate conscience shocking behavior on the part of defendant, plaintiffs' substantive due process claim based upon the danger creation theory must be dismissed. [2]

## 2.  Substantive Due Process – Familial Relationship

In *Roberts v. Jaycees*, 468 U.S. 609 (1984), the Supreme Court recognized a constitutionally protected liberty interest in familial association.  As such, this substantive due

---

[2]   In their response brief, plaintiffs state that "Defendant does not seek dismissal of claims arising from the District's own conduct."  (Doc. 15, at 4 n.4).  The Court does not share that view.  For example, in its reply brief, defendant cites cases which tend to establish that the School District's own conduct (e.g. calling S.S. "crazy") was not conscience shocking.  The Court's conclusion that plaintiffs' substantive due process claim for failure to protect is subject to dismissal is based upon the conduct of the School District, as well as the students.  No due process claim based upon a failure to protect remains.

process right is subject to protection under § 1983.  To state such a claim under § 1983, "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required."  *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985).  Put differently, a plaintiff's right to intimate association with family is only violated if the defendant's "conduct was directed at that right.  *Id.*

Defendant argues that plaintiffs' complaint is devoid of any allegation that the School District intended to interfere with the relationship between S.S. and his parents, the Sutherlins.  The Court agrees.  Plaintiffs' complaint fails to put forth any facts which demonstrate that the defendant intended to interfere with plaintiffs' familial relationship, nor can any reasonable inferences to that effect be distilled from the facts pled.  Accordingly, plaintiffs' familial relationship claim shall also be dismissed.

### 3.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV and citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Here, plaintiffs and defendant agree that plaintiff asserts an equal protection claim based upon a "class of one" theory – a claim which was formally recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).  To plead such a claim, the Tenth Circuit requires a showing that the "difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' [*Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1211 (10th Cir. 2006)], and 'wholly unrelated to any legitimate state activity,' [*Mimics, Inc. v. Vill. of Angel*

*Fire*, 394 F.3d 836, 849 (10th Cir. 2005).]"   *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d

1210, 1216 (10th Cir. 2011).  "This standard is objective—if there is a reasonable justification

for the challenged action, we do not inquire into the government actor's actual motivations."  *Id.*

Defendant argues that plaintiffs' complaint fails to adequately allege that S.S. was treated

differently from similarly situated students.[3]  However, defendant does not point out why any

student in the Nowata School District should not be considered similarly situated for purposes of

the School District's treatment of bullying allegations.  *See Curry v. Buescher*, 394 F. App'x 438,

447 (10th Cir. 2010) (quoting *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199

---

[3]   Defendant also argues that this type of claim requires a showing that the defendant was motivated by some level of animosity or ill will.  (Doc. 7, at 13, citing *Mimics*, 394 F.3d at 849 ("To succeed on such an equal protection claim, [plaintiffs] must prove that they were 'singled out for persecution due to some animosity,' meaning that the actions of [defendant] were a 'spiteful effort to get [plaintiffs] for reasons wholly unrelated to any legitimate state activity.'")). The Tenth Circuit has not explicitly adopted the ill will and animus standard.  *See Jicarilla*, 440 F.3d 1202, 1210 (10th Cir. 2006) (declining to decide whether ill will is required for such a claim, but noting that the circuits are split on the issue and acknowledging the language from *Mimics* regarding animosity); *Franklin v. City of Merriam*, 06-2421-CM, 2008 WL 1884189 (D. Kan. Apr. 25, 2008) ("the Tenth Circuit has not overtly adopted a malice or ill will requirement, and has 'struggled with the question whether class-of-one claims require an allegation of subjective ill will.'").  Recent Tenth Circuit precedent may suggest that the *Mimics* language relied upon by defendant has been impliedly rejected:

> Since *Olech*, we have refined the elements for a class-of-one claim. To prevail on this theory, a plaintiff must first establish that others, "similarly situated in every material respect" were treated differently. *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir.2006). A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was "irrational and abusive," *id.* at 1211, and "wholly unrelated to any legitimate state activity," *Mimics, Inc.*, 394 F.3d at 849 (quotation omitted). *This standard is objective*—if there is a reasonable justification for the challenged action, *we do not inquire into the government actor's actual motivations*. *Jicarilla Apache Nation*, 440 F.3d at 1211.

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (italics added).  As noted, the *Collins* court omitted the animosity language found in *Mimics* and reiterated that the standard is an *objective* one.  Given the *Collins* court's emphasis on the "objective" nature of the inquiry, and the logic thereof, the Court declines to impose a requirement that the plaintiffs make a showing of ill will or animosity at this stage.

(10th Cir. 2008) ("For persons to be similarly situated, they must be alike 'in all *relevant* respects.'") (italics added).  Here, it would seem that the only *relevant* characteristic for purposes of whether the School District's reaction to a bullying allegation is sufficient is that the individual is a student that attends school within the district.  That said, plaintiffs do allege that numerous complaints were made on behalf of S.S., yet no corrective actions were taken by the school, nor were investigations conducted to determine whether corrective action was warranted. (Doc. 2, at ¶¶ 75-78; 98; 102-10).  Plaintiffs also assert that, in the school years from 2010 to 2012, 32 incidences of student-on-student bullying were reported by the school.  One could reasonably conclude from these allegations that S.S. was subjected to bullying, that conduct was reported, the school did not respond to these complaints, and that the school responded to complaints made by others who were similarly situated.  Viewed in its totality, the complaint adequately alleges that S.S. was treated differently from similarly situated students.  Plaintiffs' equal protection claim is therefore adequately pled.

### 4. *Monell* Municipal Liability

Plaintiffs seek to impose municipal liability upon defendant under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).  In *Monell*, the Supreme Court held that

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694.  Municipal liability under *Monell* requires a plaintiff to show "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Oklahoma Cnty. Bd. of Cnty.*

*Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).   Hence, there can be no municipal liability without a constitutional violation.  *Id.*

Having found that plaintiffs have stated a § 1983 claim based upon the Equal Protection Clause, the first element of *Monell* has been satisfied.   Defendant's sole challenge to *Monell* liability in its motion to dismiss was that plaintiffs had failed to state any claim under § 1983. However, in its reply brief, defendant argued for the first time that no municipal policy or custom was the moving force behind the constitutional violation.   Defendant waived this argument by not raising it until its reply brief.  *See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (citing *Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007) (arguments first raised in a reply brief come too late).

Plaintiffs have stated a basis for municipal liability pursuant to *Monell*.

## B.     The Rehabilitation Act and Americans with Disabilities Act

Plaintiffs allege claims under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, commonly referred to as "Section 504") and Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq*., in short, the "ADA").   Section 504 provides that "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   In similar fashion, the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   The language of these two provisions is substantially similar and claims

under both acts are generally analyzed together.  *See Cohon* ex rel. *Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725-26 (10th Cir. 2011).

### 1.      School District Discrimination

To establish a claim under Section 504 for school district discrimination against S.S. based upon his disability, plaintiffs must show "(1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) (quoting *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983). Similarly, to establish such a claim under the ADA, plaintiffs must show "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Cohon*, 646 F.3d at 725 (quoting *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007)).  Hence, under either test, plaintiffs must show that the School District discriminated against S.S. because of his disability – an element which the Court finds to be dispositive of such a claim.

The facts to which plaintiffs point as demonstrating that the defendant discriminated against S.S. because of his disability are insufficient to plausibly state such a claim.  Plaintiffs allege that the School District failed to abide by their policy of investigating bullying (Doc. 2, at ¶¶ 53-54); a teacher referred to S.S. as "crazy" (*id.*, at ¶ 70); and the "District harassed and discriminated against S.S. because he was not able to fit in or socialize with others (Doc. 15, at 21, citing Doc. 2, at ¶ 68).  These allegations, taken in the light most favorable to plaintiffs, simply do not support the conclusion that the defendant took any action, or failed to take action,

because of S.S.'s disability.  Further, plaintiffs' allegation that the district "harassed and discriminated against S.S." is nothing more than a conclusory allegation which falls short of the Rule 12(b)(6) requirements.  Accordingly, the Court finds that plaintiffs have failed to state a claim for school district discrimination based upon disability under the ADA and Section 504.

### 2.    Student-on-Student Disability-Based Harassment

Plaintiffs argue that they have a claim under the ADA and Section 504 against defendant based upon the actions of the students within the school district.  Several courts have permitted plaintiffs to maintain a claim under the ADA and Section 504 for disability-based student-on-student harassment.[4]  The test applied for such a claim draws from case law which created the "deliberate indifference" standard under Title IX.[5]  Title IX shares similarities to language found in the ADA and Section 504, and this deliberate indifference standard has therefore been applied to claims brought under the ADA and Section 504.  *Compare* 28 U.S.C. § 1681(a) *with* 42 U.S.C. § 12132 *and* 29 U.S.C. § 794(a).  Under this framework, a five-part test has been established that a plaintiff must satisfy in order to impose liability on a school district for disability-based student-on-student harassment: "(1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive

---

[4]    *See, e.g., S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008); *Werth v. Bd. of Directors of the Pub. Sch. of Milwaukee*, 472 F.Supp.2d 1113, 1127 (E.D. Wis. 2007); *K.M. v. Hyde Park Central Sch. Dist.*, 381 F.Supp.2d 343, 359 (S.D.N.Y. 2005); *Biggs v. Bd. of Educ. of Cecil County*, 229 F.Supp.2d 437, 445 (D. Md. 2002).

[5]    The "deliberate indifference" standard originates from *Davis v. Monroe County Board of Education*, 526 U.S. 629, 645-47 (1999), a peer-on-peer sexual harassment case that was brought under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment." *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008) (citing *Werth v. Bd. of Directors of the Pub. Sch. of Milwaukee*, 472 F.Supp.2d 1113, 1127 (E.D. Wis. 2007). The Tenth Circuit has not had occasion to adopt this test for claims similar to those at issue here, however both parties suggest that this test should be applied here.[6]

The defendant argues that plaintiffs have failed to adequately allege the second and fifth elements: that S.S. was harassed by students because of his disability and that the School District was deliberately indifferent to the harassment. Plaintiffs disagree with both points.

The allegations contained in plaintiffs' complaint, taken as a whole and in a light most favorable to plaintiffs, sufficiently allege that S.S. was harassed by students because of his disability; namely, Asperger's Disorder. As plaintiffs point out in their response (Doc. 15, at 18 & n. 14), individuals with Asperger's suffer from significant problems with social interactions and may be labeled as different by their peers. *See, e.g.*, Daniela Caruso, *Autism in the U.S.: Social Movement and Legal Change*, 36 Am. J.L. & Med. 483, 511-12 (2010) (discussing difficulties faced by those with Asperger's and autism spectrum disorders generally). Plaintiffs' complaint states that S.S. was labeled as "having poor social skills" and made fun of as a result of his inability to "socialize well with others." (Doc. 2, at ¶¶ 67 and 69). Other students called him names such as "retard," "crazy," "creepy," and "freak" (*id.*, at ¶¶ 71 and 73) – names which can reasonably be inferred to make reference to S.S.'s social difficulties.

---

[6] The Tenth Circuit has adopted and applied the *Davis* deliberate indifference test to student-on-student sexual harassment claims under Title IX. *See, e.g., Murrell v. School Dist. No. 1, Denver, Colo.* 186 F.3d 1238, 1246 (10th Cir. 1999).

Plaintiffs' complaint also sufficiently alleges that defendant was deliberately indifferent to the harassment which S.S. received at the hands of his peers. Plaintiffs allege several instances where bullying behavior was reported by plaintiffs, or by others, to the school, which, according to the complaint, did not take responsive action to cease or prevent the harassing behavior. (*Id*., at 75-78). At the dismissal stage, these allegations are sufficient to plead a claim for disability-based student-on-student harassment.

### 3. Hostile Education Environment

Plaintiff invites this Court to recognize a "hostile education environment" claim, akin to a hostile work environment claim under Title VII of the Civil Rights Act of 1964. (Doc. 15, at 20). Defendant correctly points out that only a small number of courts have recognized such a claim, and the Tenth Circuit is not among them. In fact, plaintiffs cite only *Guckenberger v. Boston Univ*., 957 F. Supp. 306 (D. Mass. 1997) in support of such a claim. In *Guckenberger*, the court noted that only one other federal court had permitted such a claim. *Id*. at 313 (citing *Gaither v. Barron*, 924 F. Supp. 134, 136 (M.D. Ala. 1996)). However, the *Gaither* court stated that it was applying what was ordinarily a hostile work environment theory, and, in any event, dismissed the claim as insufficiently pled. These cases do not persuade the Court that such a claim should be permitted in this case. Accordingly, the Court declines to recognize such a claim. In any event, the Court has already found that plaintiffs have stated a claim under the ADA and Section 504 for student-on-student disability-based harassment, making the requested extension of law unnecessary in this particular case.

### C. Breach of Contract

Plaintiffs allege a breach of contract claim against defendant based upon the theory that the School District's Student Handbook creates an implied contract between S.S. and the School

District.  Plaintiffs state that defendant breached this implied contract by failing to abide by its zero tolerance bullying policy.  Defendant argues that plaintiffs' contract claim fails for lack of consideration.

Oklahoma has never recognized an implied contract between a public elementary or secondary school and a student based upon the student handbook.  As a federal court exercising supplemental jurisdiction over the plaintiffs' state law claims, the Court must hazard a guess at whether the Oklahoma Supreme Court, if given the opportunity, would recognize such a claim.  *See Napier v. Cinemark USA, Inc*., 635 F. Supp. 2d 1248, 1252 (N.D. Okla. 2009) (citing *Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability Ins. Co*., 214 F.3d 1183, 1188 (10th Cir. 2000)).

Oklahoma jurisprudence recognizes that an employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object and (4) consideration.  *Russell v. Bd. of Cnty. Comm'rs, Carter Cnty*., 952 P.2d 492, 501-02 (Okla. 1997).  In addition, the Oklahoma Court of Civil Appeals has suggested, though not explicitly held, that an implied contract based upon a university's student code would be recognized under Oklahoma law.  *See Mason v. State* ex rel. *Bd. of Regents of Univ. of Oklahoma*, 23 P.3d 964, 970 (Okla. 2000).  However, Oklahoma courts have not dispensed with the basic contract formation requirements, such as consideration, in the context of implied contracts.  *See Russell*, 952 P.2d at 501-02.  This basic principle leads to the conclusion that Oklahoma courts would not recognize a breach of an implied contract claim under the facts presented here.

The majority of courts which have considered whether a student handbook can form the basis for an implied contract between a student and a public secondary or elementary school

have found that such claims fail for lack of consideration, among other things.  This is because compulsory attendance laws require the student's attendance, thereby creating a lack of consideration on the part of the student in exchange for any promises the school may have made in the student handbook.  *See, e.g., Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 217 (D.N.H. 2009) (collecting cases); *Higginbottom* ex rel. *Davis v. Keithley*, 103 F. Supp. 2d 1075, 1081 (S.D. Ind. 1999) ("Indeed, the compulsory nature of public elementary education, which requires public schools to accept enrollment of children in their districts and mandates student attendance, militates against importation of mutual assent and consideration principles into the public elementary school context."); *Zellman* ex rel. *M.Z. v. Indep. Sch. Dist. No.* 2758, 594 N.W.2d 216, 219 (Minn. Ct. App. 1999) ("Unlike the employment relationship or a student's payment of tuition, public schools are required by law to provide free education to students living within the school district.  Rather than a contractual arrangement, this represents the public policy of the state and its citizens.") (internal citation omitted).[7]

Based upon Oklahoma contract law and the weight of authority cited above, this Court finds that the Oklahoma Supreme Court would not recognize an implied contract claim based upon a public elementary school's student handbook.  Accordingly, plaintiffs' breach of contract claim is dismissed.

### D.   Negligence

Defendant seeks dismissal of plaintiffs' negligence claim for failure to allege compliance with Oklahoma's Government Tort Claims Act ("GTCA").  Defendant argues that the complaint

---

[7]   The Court is not persuaded by plaintiffs' argument that the funding provided by the federal government for each student attending a public school suffices as consideration here.  Those funds are not provided to the school district by the student or at the student's request; instead these funds represent, at most, an understanding between the federal government and the school district.

is devoid of any reference to the GTCA's pre-lawsuit notice requirements having been met. Plaintiffs' response makes it apparent that they complied with the GTCA's pre-suit requirements, and they argue that, given defendant's clear notice of their claims, the complaint says enough to substantially comply with the GTCA.[8]

Plaintiffs have sued a school district which is a political subdivision of the State of Oklahoma.  In Oklahoma, "[g]overnmental immunity of a subdivision of the State is waived only to the extent and in the manner provided in the GTCA."  *Teeter v. City of Edmond*, 85 P.3d 817, 820 (Okla. 2004).  "Compliance with the GTCA is a jurisdictional prerequisite to a civil action under the statute, and such compliance must therefore be specifically alleged in a plaintiff's complaint."  *Morris v. City of Sapulpa*, 2011 WL 1627098 (N.D. Okla. Apr. 28, 2011) *aff'd sub nom. Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012).

Though there does not appear to be a dispute that plaintiffs complied with the GTCA with respect to their pre-suit actions, their complaint does not make reference to the GTCA or otherwise allege compliance with it.  Because such compliance is a jurisdictional prerequisite, and the Court must base its decision on the face of the complaint, plaintiffs' negligence claim should be dismissed on this basis.  However, the Court finds that plaintiffs should be given the opportunity to amend their complaint to allege compliance with the GTCA.

### E.    Punitive Damages

Defendant contends that plaintiffs are not entitled to recover punitive damages against defendant under any claim alleged in the complaint.  Plaintiffs do not appear to dispute this, as they did not respond to this argument in their response brief.  (*See* Doc. 15).

---

[8]    Defendant's reply appears to concede that plaintiffs did in fact comply with the notice procedures provided by the GTCA and its argument is limited to the noted pleading deficiency.

Assuming plaintiffs amend their complaint to allege compliance with the GTCA, plaintiffs' remaining claims can be broken down as follows:  1) a claim under the ADA and Section 504 of the Rehabilitation Act and 2) a negligence claim subject to the GTCA.  Defendant is correct that both of these theories do not permit the recovery of punitive damages.  Punitive damages "may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  The GTCA also prohibits the recovery of punitive damages against the School District.  51 *Okla. Stat*. § 154(C) ("No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages.").

Plaintiffs' request for punitive damages is therefore dismissed.

### IV.    SUMMARY

Based on the above analysis, the Court has found that the following of plaintiffs' claims should be dismissed:  claims under 42 U.S.C. § 1983 based upon substantive due process; claims under the ADA and Section 504 of the Rehabilitation Act which are based upon school district discrimination and hostile education environment (to the extent pled); and breach of contract.

The Court has also found that plaintiffs' negligence claim has been deficiently pled, but may be re-alleged by way of amendment.

Plaintiffs' claims based upon § 1983 for equal protection and *Monell*-based municipal liability, and student-on-student disability-based harassment under the ADA and Section 504, remain.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss is **granted in part** and **denied in part**, as provided herein.  Plaintiffs shall file their amended complaint re-alleging their claim for negligence as set forth above within 21 days of the date of this order.

**SO ORDERED** this 13th day of May, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE